UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHERYL ANN BEAULIEU,   )
                       )
    Plaintiff          )
                       )
v.                     )   No. 2:14-cv-80-JHR
                       )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
                       )
    Defendant          )

# MEMORANDUM DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal[2] contends that the administrative law judge erred in failing to find that she suffered from a severe mental impairment before the last day of her eligibility for benefits. I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through December 31, 1986, Finding 1, Record at 77; that, before that date, the plaintiff suffered from the medically determinable impairment of an

---

[1] The parties have consented to have me preside over all proceedings in this action, including the entry of judgment. ECF No. 18.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 11, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

affective disorder, but that the impairment did not significantly limit her ability to perform basic work-related activities for a period of 12 consecutive months, and, therefore, the impairment was not severe, Findings 3-4, *id.* at 78; and that, as a result, the plaintiff was not under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset of disability, January 1, 1985, through the date last insured, December 31, 1986, Finding 5, *id.* at 84. The Appeals Council declined to review the decision, *id.* at 17-19, making it the determination of the commissioner. 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process, at which stage the claimant bears the burden of proof, but it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Humans Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff essentially contends that the administrative law judge was required to accept the opinion of her treating physician, Dr. Michael Rowland, rather than the opinions of the state-agency reviewing physicians. Itemized Statement of Specific Errors ("Itemized Statement") (ECF No. 17) at 9-11. Specifically, she asserts that the administrative law judge's decision to give little weight to the retrospective opinion of Dr. Michael Rowland, her primary care family practice physician in 1985-87 and from 2008 through the date of the decision, was not supported by substantial evidence. *Id.* at 9-10.

The determinative question on appeal from a decision of the defendant is, of course, not whether there is substantial evidence in the record that would support a conclusion different from that drawn by the administrative law judge, but rather whether there is substantial evidence to support that conclusion. *E.g., Gagnon v. Colvin*, No. 2:13-cv-00213-NT, 2014 WL 3530629, at *4 (D. Me. July 15, 2014). The opinion upon which the plaintiff apparently relies is a letter dated February 23, 2012, in which Dr. Rowland stated, in relevant part:

> This letter is submitted in support of permanent disability status for Cheryl Beaulieu, age 53. Cheryl was my primary care patient from 1985-1987, and from 2008 to present. I have reviewed her extensive records from 1987 to 2008 as well, and am familiar with her medical history.
>
> Disability is primarily based on mental illness. She last worked in approximately 1982. In 1984, she married her present husband . . . and moved from Pennsylvania to Maine, leaving her entire family support network behind. She became pregnant in 1985, a pregnancy complicated by . . . a psychiatric hospitalization at KVMC for severe depression.
>
> Following that pregnancy, she continued to have significant depression, and was again hospitalized at KVMC for depression in 1990.
> . . .
> Her third psychiatric admission occurred in 1994 to St. Marys, diagnosis major depression with psychosis, possible bipolar disorder. She was readmitted 6 months later with the same diagnosis.

> She was cared for by TriCounty Mental Health (Dr. John Sytsma) from 1994 to 2004. Psychiatric management was challenging, with trials of 15 different psychotropic medications of various classes, settling ultimately on Lexapro and Seroquel. After 2004 she was lost to psychiatric follow[]up for reasons related to coverage and cost of care. She last took Lexapro in 2008.
>
> She has continued to struggle with the challenges of daily life, and has continued to have significant medical challenges, some of which have a likely psychiatric component. . . .
>
> * * *
>
> In summary, this is a 59 [sic] year old woman who has not worked for the past 30 years. The primary reason for her inability to work has been, and continues to be, persistent poor mental health. This has included, at various times, anxiety, depression, psychosis, bipolar disorder and a variety of disabling somatoform disorders.

Record at 924.

Bearing in mind that the plaintiff's burden at Step 2 in this case is to demonstrate that her claimed mental impairment was severe for at least a 12-month period prior to her date last insured, December 31, 1986, *see* 20 C.F.R. § 404.1509, in the context of an alleged date of onset of disability of January 1, 1985, the letter mentions only a psychiatric hospitalization in 1985 for "severe depression" during this period. In fact, as the administrative law judge noted, Record at 80, Dr. Rowland's treatment notes from October 1985 through April 1988 "do not even mention depression," and the plaintiff declined further psychiatric treatment after the 1985 hospitalization. *Id.* at 926-59, 1008-18.

The plaintiff acknowledges that Dr. Rowland's opinion that she was unable to work at the relevant time is an opinion on an issue that is reserved to the defendant, Itemized Statement at 10, and thus need not be adopted by the administrative law judge, *see* 20 C.F.R. § 404.1527(d)(3), but nonetheless asserts that Dr. Rowland's opinion "concerning the severity of Plaintiff's impairment prior to her DLI [date last insured] is supported by" certain treatment notes. Itemized Statement at 10. However, the only opinion expressed in Dr. Rowland's letter that may reasonably be

4

characterized as "concerning the severity" of the plaintiff's mental impairment is the opinion that it rendered her unable to work, or disabled. The plaintiff's argument is an attempted end-run around the regulatory prohibition on reliance on such opinions. In addition, the letter offers no specific support for Dr. Rowland's conclusion concerning the relevant period of time other than the 1985 hospitalization.

The six pages of the record cited by the plaintiff as providing support for Dr. Rowland's opinion, Itemized Statement at 10, do not require that his opinion be adopted, nor do they negate the reasons given by the administrative law judge for his decision to accord that opinion "little to no weight." Record at 82.

Pages 950-51 of the record, as of March 4, 1985, contain the reports of the plaintiff and her husband to the effect that she had "seemed depressed" for the three, four, or eight preceding months, and Dr. Rowland's impression that antepartum depression might be present, with a referral for evaluation of that depression. The plaintiff rejected admission to the psychiatric service at Kennebec Valley Medical Center, where she was treated primarily for hyperemesis gravidarum, a condition related to her pregnancy. *Id*. at 939. The rejection of psychiatric treatment occurred after the note of the admitting physician to the effect that she would make a psychiatric referral for "follow-up on the psychiatric home health nurse." *Id*. at 943. A discharge note from an earlier pregnancy-related admission notes that the requested psychiatric referral resulted in an agreement that the plaintiff was "significantly depressed" in March 1985, but no medication or treatment was prescribed. *Id*. at 946-47. The final page of the record cited by the plaintiff in this regard is a discharge summary for a February 17, 1985, admission that mentions that the plaintiff "respond[ed] well" to group discussion of her feelings and family dynamics bur "continued to refuse" psychiatric admission. *Id*. at 958.

5

Contrary to the plaintiff's contention, these records create doubt about Dr. Rowland's statement that she had a psychiatric hospitalization in 1985 at Kennebec Valley Medical Center at all, rather than supporting his retrospective opinion. More important, none of the cited references to depression may reasonably be read to require a conclusion that the depression had persisted at the severe level, as that term is defined in Social Security regulations, for 12 months or more during 1985 and 1986.[3]

The defendant "concedes that the opinions of the state agency reviewing psychologists do not lend support to the ALJ's decision," for two reasons. Opposition at 7. This concession makes it unnecessary to address the plaintiff's argument that the administrative law judge's reliance on those assessments was "erroneous," Itemized Statement at 10. I note, however, that the plaintiff does not describe how this error, standing alone, would have required a different outcome on her application, a requirement for a Step 2 appeal that has long been imposed by this court. *Bolduc v. Astrue*, No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

The administrative law judge's extensive discussion of his reasons for rejecting Dr. Rowland's conclusions and for finding that no mental impairment claimed by the plaintiff was severe before the remote date last insured, Record at 80-84, is sufficient to support his conclusion at Step 2, where the claimant bears the burden of proof.

---

[3] The plaintiff's argument that "the extensive contemporaneous treatment notes concerning Plaintiff's 'spouse who was angry over medical bills' (R939) with a 'controlling personality' who 'consistently refused to participate in groups on C-2' (R958) . . . offer an alternative explanation for Plaintiff's failure to seek further treatment for her mental illness prior to her DLI," Itemized Statement at 11, would require the court to speculate about the import of raw medical records, which neither the administrative law judge nor a reviewing court may do. *See, e.g., Plato v. Colvin,* Civil No. 1:12-cv-319-DBH, 2013 WL 5348603, at *9 (D. Me. Sept. 24, 2013). In addition, the entries on the two pages of the extensive medical record that are cited by the plaintiff in this regard cannot reasonably be characterized as "extensive." Finally, as the defendant notes, Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 21) at 9, the plaintiff raised no such argument before the administrative law judge, and may not, therefore, raise it now. *See Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001).

6

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 7th day of April, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge